UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

IN RE:
  LA TOOL INC.,                                 :    Case No. 23-22653-JAD
                        *Debtor(s).*            :    Chapter 11 (Subchapter V Small Business)
                                                :
                                                :

---

### SMALL BUSINESS DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
### DATED AS OF  April 29, 2024

This Plan of Reorganization  dated as of April 29, 2024 (the "Plan") is presented to you to inform you of the proposed Plan for restructuring the debt of Debtor LA Tool, Inc., and to seek your vote to accept the Plan.

You are encouraged to carefully review the Plan in full, including all exhibits, schedules and attachments, before deciding how to vote on the Plan.  A list of definitions appears at the end of this document to assist you in your review.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN.  IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY INSERT OBJECTION DATE/TIME.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY THE DATE AND TIME INDICATED ON THE SCHEDULING ORDER BEING SERVED WITH THIS PLAN. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: Gregory C. Michaels, Esquire, Dickie McCamey & Chilcote, P.C., Two PPG Place, Suite 400, Pittsburgh, PA 15222.**

**PLEASE BE ADVISED THAT SHOULD A CLASS OF CREDITORS OR EQUITY SECURITY HOLDERS FAIL TO CAST ANY VOTES EITHER TO ACCEPT OR REJECT THE PLAN, THAT CLASS SHALL BE DEEMED TO HAVE ACCEPTED THE PLAN AND VOTED IN FAVOR OF PLAN CONFIRMATION.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR THE DATE AND TIME INDICATED ON THE SCHEDULING ORDER BEING SERVED WITH THIS PLAN BEFORE JUDGE JEFFREY A. DELLER IN COURTROOM D, 54th FLOOR, US STEEL TOWER, 600 GRANT STREET, PITTSBURGH, PA 15219.**

**YOUR RIGHTS MAY BE AFFECTED BY THIS PLAN. YOU SHOULD CONSIDER DISCUSSING THIS DOCUMENT WITH AN ATTORNEY.**

Respectfully submitted,


/s/Gregory C. Michaels
Gregory C. Michaels, Esquire
Dickie McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA  15222-5402
412-281-7272
gmichaels@dmclaw.com
PA Attorney I.D. No. 205948
Counsel for Debtor LA Tool, Inc.

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

This concise summary of the Plan, consistent with *Local Rule 3016-2*, describes with particularity the treatment of each class of Creditors and the source of funding for the Plan.

The Plan proposes to pay the Debtor's creditors from cash flow from operations.

The Plan provides for the following classes of claims and interests for priority claims, secured claims, general unsecured claims, and equity interests:

| Class # | Class Description | Impaired or Unimpaired | Plan Section |
|---------|-------------------|------------------------|--------------|
| 1 | Priority Tax Claims | Unimpaired | 2.1.2 |
| 2 | Secured Claim of First National Bank | Impaired | 2.2.1 a)-d) |
| 3 | Secured Claim of First Commonwealth Bank | Impaired | 2.2.1 e)-h) |
| 4 | Secured Claim of Deere & Co. | Impaired | 2.2.1 i)-k) |
| 5 | Secured Claim – Collateral to be Surrendered | Unimpaired | 2.2.1 l)-o) |
| 6 | Secured Claim of Mary Crocker | Impaired | 2.2.1 p)-r) |
| 7 | General Unsecured Creditors | Impaired | 2.2.3 |
| 8 | Equity Security Holders | Unimpaired | 2.2.4 |

The Plan proposes to pay administrative and priority claims in full unless otherwise agreed. The Debtor estimates approximately 5% will be paid on account of general unsecured claims pursuant to the Plan.

The specific treatment of the classes of claims and interest are set forth in Article 2 of the Plan.

Only holders of Allowed Claims in a class identified as impaired may vote on whether to accept or reject the Plan.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

**Please also be advised that should a class of creditors or equity security holders fail to cast any votes either to accept  or reject the Plan, that class shall be deemed to have accepted the Plan and voted in favor of Plan confirmation.**

# ARTICLE 1
## DISCLOSURES REGARDING THE DEBTOR(S) AND THE BANKRUPTCY CASE

**1.1      Describe Nature of the Debtor's Business**

Debtor is a specialized manufacturing company which performs specific operations in the thermoset injection molding and compression molding manufacturing process employed by its affiliated entity, Latrobe Associates, Inc. Debtor employs approximately 15 individuals who are subcontracted to Latrobe Associates, Inc.

**1.2.     Describe History of Debtor's Business Operations**

Debtor has been in the business of thermoset injection molding and compression molding manufacturing since 1999 formed by the owners of Latrobe Associates, Inc. The Debtor was formed in order to perform specific functions as a part of Latrobe Associates, Inc.'s manufacturing process.

**1.3.     Describe Prepetition Legal Structure and Ownership**

Debtor is Pennsylvania corporation with its Chief Executive Officer, Bradley Jackovitz, as its sole shareholder.

**1.4.     Describe All Debtor's Assets**

| Asset | Reorganization Value | Liquidation Value | Liens Encumbering the Asset | Value of Any Claimed Exemption[1] | Value of the Estate's Interest in the Asset[2] |
|---|---|---|---|---|---|
| Bank Accounts | $179.56 | $179.56 | $2,228,514.23 | N/A | $0.00 |
| Plant Equipment and Molds | $152,562.45 | $152,562.45 | $2,228,514.23 | N/A | $0.00 |
| Accounts Receivable | $201,039.88 | $201,039.88 | $2,228,514.23 | N/A | $0.00 |
| John Deere 1025R Tractor | $12,000.00 | $3,460.88 | $17,717.83 | N/A | $0.00 |
| John Deere 260B Backhoe | $6,200.00 | $1788.12 | $17,717.83 | N/A | $0.00 |
| John Deere 120R Boom Assembly | $3,500.00 | $1009.42 | $17,717.83 | N/A | $0.00 |
| John Deere 54D Side Discharge Mower | $2,299.00 | $663.05 | $17,717.83 | N/A | $0.00 |
| | | | | **TOTAL for** | **$0.00** |

---

[1] *State "N/A" if not applicable*
[2] Calculated by subtracting from the Liquidation Value the amount of liens encumbering the asset and the value of any claimed exemption. *See* Definition of Value of Estate's Interest in Article 7.

| | | | | **Estate's Interest in Assets:** | |
|---|---|---|---|---|---|

**1.5**   **Identify any assumptions made concerning the Asset's value particularly to the extent the value of the asset is different from what was scheduled as of the Petition Date**

Since the filing of the bankruptcy, the Debtor has or will surrender the Bobcat Model T450 which was fully encumbered by liens on title held by secured creditor Wells Fargo Vendor Financial Services, LLC.

**1.6.**   **Identify Debtor's Liabilities**

The table below discloses the Debtor's liabilities by aggregating the total amount of claims in each class under the Plan.  For a breakdown of specific claim amounts *see* Article 2, Sections 2.1 and 2.2.

| Class # | Description of Liability by Class | Total Amount of Claims in the Class | Disputed (D) Unliquidated (U) Contingent (C) |
|---|---|---|---|
| 1 | Priority Tax Claims | $53,205.91 | C |
| 2 | Secured Claim of First National Bank | $193,457.36 | |
| 3 | Secured Claim of First Commonwealth Bank | $2,053,056.87 | C |
| 4 | Secured Claim of Deere & Co. | $17,717.83 | |
| 5 | Secured Claim – Collateral to be Surrendered | $70,494.96 | |
| 6 | Secured Claim of Mary Crocker | $90,138.80 | D |
| 7 | General Unsecured Creditors | $203,727.56 | |
| **TOTAL:** | | $2,681,799.29 | |

**1.7.**   **Current and Historical Financial Conditions**

The Debtor's relevant financial data, including the Debtor's current and 12-month historical financial performance, is summarized, below.  Consistent with current practice and so there is no ambiguity as to duration of the historical performance, a 12-month history should be included.

Information concerning the Debtor's post petition financial performance is found in the monthly operating reports filed of public record by the Debtor with the Bankruptcy Court.

The Debtor's financial projections providing information on the Debtor's ability to fund its obligations under this Plan are found in Article 3 and Schedules 3.1 and 3.2 of this Plan.

**1.8.**   **Events Leading to the Filing of the Bankruptcy Case**

On the Petition Date, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the US Bankruptcy Court for the Western District of Pennsylvania.

The impetus for the Debtor's filing was the maturity of its line of credit with First National Bank

and the default of loans obligations owed to First Commonwealth Bank by its affiliated entity, Latrobe Associates, Inc. for which Debtor's assets were pledged. In order to stay an action on its assets and preserve its cash flow, Debtor filed its Chapter 11 case.

**1.9.** **Significant Events During the Bankruptcy Case, which may Include:**

    **1.9.1** Any asset sales outside the ordinary course of business, debtor-in- possession financing, or cash collateral orders:

    Consent Order Authorizing Interim use of Cash Collateral at Doc No.53; and
Order Approving Certificate of Consent to Extension of Interim Use of Cash Collateral at Doc No. 64.

    **1.9.2** The identity of professionals approved by the Bankruptcy Court:

    Dickie McCamey & Chilcote, P.C.

    **1.9.3** Any adversary proceedings that have been filed or other significant litigation that has occurred (including contested claim disallowance proceedings), and any other significant legal or administrative proceedings that are pending or have been pending during the case in a forum other than the Bankruptcy Court:

    None.

    **1.9.4** Any steps taken to improve operations and profitability of the Debtor:

Debtor has increased productivity levels across its production lines and streamlined costs in order to maintain profitability.

    **1.9.5** Other events as appropriate:

None.

**1.10.** **Projected Avoidance Actions**

The Debtor has not yet completed its investigation regarding transactions that may be subject to avoidance. For example, if you received a payment or other transfer of property within 90 days of bankruptcy (or if you are an Insider, within 365 days of bankruptcy), the Debtor may seek to avoid such transfer.

**1.11.** **Describe Other Potential Litigation**

None at this time.

## ARTICLE 2

## THE PLAN

**2.1** **Treatment of Unclassified Claims**

### 2.1.1   Administrative Claims

Each Allowed Administrative Claim shall be paid as follows: (a) in full on the Effective Date, or (b) in such amounts and on such other terms as may be agreed on between the holder of such Allowed Administrative Claim and the Debtor, or (c) as ordered by the Court.

The following chart lists the Debtor's estimated Administrative Claims, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
| --- | --- | --- |
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | N/A |
| Administrative Tax Claims | $53,205.91 | Payment as set forth in Section 2.1.2 |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | None. | N/A |

| Professional fees, as approved by the Bankruptcy Court | Dickie McCamey & Chilcote, P.C.- $27,000.00 for estimated legal fees and costs for Debtor's counsel with final amount to be determined via court approved fee application. | After Bankruptcy Court approval, Payment through the Plan as follows: payment to be made from funds available in Debtor's bank account on or before 30 days after Court approval or via monthly installments of no less than $1/12^{th}$ of the allowed fees over a 12 month period with the first payment being due on or before 30 days form Court approval at the discretion of the Debtor based upon available funds. |
| Clerk's Office fees | $0.00 | Paid in full on the Effective Date. |
| Other Administrative Expenses | Fees and costs for James Fellin, Subchapter V Trustee to be determined via court approved fee application of approximately $5,000.00. | After Bankruptcy Court approval, Payment through the Plan as follows: payment to be made from funds held in escrow under the approved Cash Collateral Order and Budget and for any remaining balance from available funds in Debtor's bank account on or before 30 days after Court approval. |

| Trustee | N/A | |
|---------|-----|---|
| TOTAL | $85,205.91 | |

### 2.1.2  Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code.  Unless the holder of such a §507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the Petition Date.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Taxing Authority | Tax Type | Claim Amount | Plan Treatment |
|------------------|----------|--------------|----------------|
| Department of Treasury – Internal Revenue Service | FICA, Corporate Income Tax, FUTA and Excise | $45,637.49 | The Priority Tax Claim of the Department of Treasury – Internal Revenue Service filed proofs of claim at Proof of Claim Nos. 13-1, 13-2, 13-3, and 13-4. The Department of Treasury – Internal Revenue Service shall be paid the full amount of its claim in the amount of $45,637.49 through a monthly payment for a period of five years. |
| PA Department of Revenue | Employer Withholding Tax | $7,331.36 | The Priority Tax Claim of the PA Department of Revenue filed proofs of claim at Proof of Claim Nos. 3-1 and 3-2. The PA |

| | | | |
|---|---|---|---|
| | | | Department of Revenue shall be paid the full amount of its claim in the amount of $7,331.36 through a monthly payment for a period of five years. |
| Commonwealth of PA- Department of Labor and Industry | Unemployment Compensation | $237.06 | The Priority Tax Claim of the Commonwealth of Pennsylvania, Department of Labor and Industry Filed at Proof of Claim No. 14-1 shall be paid the amount of $237.06 on or before the effective date of the Plan, which will be in full satisfaction of its priority claim filed at Proof of Claim No. 1-1. |
| City of Latrobe Tax Revenue Office | Local withholding | $90.00 | The Priority Tax Claim of the City of Latrobe has a claim in the amount of $90 shall be paid on or before the effective date of the Plan. |

**2.2**    **Classification and Treatment of Claims and Equity Interests**

### 2.2.1  Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under §506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to §1190(3) of the Code as set forth below, if applicable.

The following table lists the classes of the Debtor's Secured Claims and their proposed treatment under the Plan:

| Class # | Description | Disputed? (Y/N) | Impaired / Unimpaired | Treatment |
|---|---|---|---|---|
| 2 | Creditor Name: First National Bank<br><br>Collateral description: Equipment, Accounts, Inventory and Raw Materials<br><br>Allowed Secured Amt.: $193,457.36<br><br>Priority of lien: First | N | Impaired | First National Bank filed a proof of claim at Proof of Claim No. 5-1 and 5-2. in the amount of $193,457.36 . First National Bank shall be paid full value of its allowed secured claim through the monthly amount of $3,390.87. See Section 2.2.1 a) – d) for Plan Treatment. |

a)      Since the entry of the Consent Order Authorizing Interim use of Cash Collateral, First National Bank has received $4,500.00 in adequate protection payments towards its secured claim.

b)      On the remainder of its claims, First National Bank shall be paid the full value of its claims at 2.0% interest amortized over a period of sixty (60) months with the first payment being due on or before the last day of the month in the month following the effective date of the Plan with subsequent payments due on or before the last day of every month thereafter until the claim is paid in full pursuant to the terms contained in this Plan.

c)      Upon completion of all payments to First National Bank as called for in this Plan, First National Bank shall satisfy, remove and/or extinguish any liens against the assets of the Debtor supported by a UCC filing with the Commonwealth of Pennsylvania. First National Bank shall file said satisfaction with the appropriate state office within thirty (30) days of tender of final payment.

d)      First National Bank and Debtor shall each pay their own legal fees (if any) incurred in connection with Debtor's Chapter 11 Bankruptcy case.

| Class # | Description | Disputed? (Y/N) | Impaired/ Unimpaired | Treatment |
|---------|-------------|-----------------|----------------------|-----------|
| 3 | Creditor: First Commonwealth Bank<br><br>Collateral description: Equipment, Accounts, Inventory and Raw Materials<br><br><br><br>Priority of lien: Second | N | Impaired | First Commonwealth Bank filed proofs of claim at Proof of Claim Nos. 10-1, 11-1, and 12-1 in the total amount of $2,035,056.87. First Commonwealth Bank shall be paid full value of its allowed secured claim. See Section 2.2.1 e) –h) for Plan Treatment. |

e)      Since approval of the Order Approving Amended Joint Stipulation Authorizing Interim Use of Cash Collateral in the companion case of In re Latrobe Associates, Inc., First Commonwealth Bank has received $63,000.00 in adequate protection payments towards its secured claim which were filed in the same amount against this Debtor and related Debtor Latrobe Associates, Inc..

f)      To the extent First Commonwealth Bank is not paid in full under the Plan of Reorganization of Debtor Latrobe Associates, Inc., on the remainder of its claims, First Commonwealth Bank shall be paid the full value of its claims at 2.0% interest amortized over a period of sixty (60) months with the first payment being due on or before the last day of the month in the month following the effective date of the Plan with subsequent payments due on or before the last day of every month thereafter until the claim is paid in full pursuant to the terms contained in this Plan. Debtor projects the monthly payment to First Commonwealth Bank to be $1,500.00.

g)      Upon completion of all payments to First Commonwealth Bank as called for in this Plan, First Commonwealth Bank shall satisfy, remove and/or extinguish any liens against the assets of the Debtor supported by a mortgage and/or a UCC filing with the Commonwealth of Pennsylvania. First Commonwealth Bank shall file said satisfaction with the appropriate state office within thirty (30) days of tender of final payment.

h)      First Commonwealth Bank and Debtor shall each pay their own legal fees (if any) incurred in connection with Debtor's Chapter 11 Bankruptcy case.

| Class # | Description | Disputed? (Y/N) | Impaired/ Unimpaired | Treatment |
|---|---|---|---|---|
| 4 | Creditor Name: Deere & Company<br><br>Collateral description: Equipment<br><br>Allowed Secured Amt.: $17,717.83<br><br>Priority of lien:   First | N | Impaired | Deere & Company ("Deere") holds a claim in the amount of $17,717.83 based upon Deere's Proof of Claim filed Proof of Claim Nos. 1-1 and 6-1. Deere shall be paid full value of its allowed secured claim. See Section 2.2.1 i) – k) for Plan Treatment. |

i)      Class 4 creditor shall be paid the full value of its claim as of petition date at the fixed contractual interest rate amortized over a period of 60 months with first payment being the first adequate protection payment of $1,040.70 made by the Debtor since the Petition Date and with all subsequent payments due on or before the last day of every month thereafter until the claim is paid in full pursuant to the terms contained in this Plan.

j)      Upon completion of all payments to Class 4 creditor as called for in this Plan, the creditor shall satisfy, remove and/or extinguish any liens against the assets of the Debtor supported by a mortgage and/or a UCC filing with the Commonwealth of Pennsylvania. The creditor shall file said satisfaction with the appropriate state office within thirty (30) days of tender of final payment.

k)      Class 4 creditor and Debtor shall each pay their own legal fees (if any) incurred in connection with Debtor's Chapter 11 Bankruptcy case.

| Class # | Description | Disputed? (Y/N) | Impaired/ Unimpaired | Treatment |
|---|---|---|---|---|
| 5 | Creditor Name: Wells Fargo Vendor Financial Services, LLC<br><br>Collateral description: Bobcat T450<br><br>Allowed Secured Amt.: N/A<br><br>Priority of lien: First | | Impaired | Wells Fargo Vendor Financial Services, LLC ("Wells Fargo") holds a claim in the amount of $70,494.96 based on Proof of Claim No. 2-1. The Debtor has surrendered or will surrender the collateral to Wells Fargo. See Section 2.2.1 l) through 2.2.1 o) for further Plan treatment. |

l)      The collateral encumbered by the claims of Class 5 creditor either has been or will unilaterally surrendered back to the appropriate Class 5 creditor.

m)      No payments will be made on the Class 5 secured claim.

n)      Class 5 creditors will have thirty (30) days from the date of the Plan confirmation to file any deficiency claim with respect to the surrendered collateral. Any timely filed and allowed deficiency claim shall be treated and paid as a general unsecured debt and paid the same rate as all other allowed general unsecured creditors in Plan Section 2.2.3.

o)      The claims of Class 5 creditors shall be considered unimpaired with respect to Class 5 but shall be considered impaired in the general unsecured creditor class (Class 7).

| Class # | Description | Disputed? (Y/N) | Impaired / Unimpaired | Treatment |
|---|---|---|---|---|
| 6 | Creditor Name: Mary F. Crocker<br><br>Collateral description: Equipment, Accounts Receivable<br><br>Claimed Amt.: $90,138.88<br><br>Priority of lien: Third | Y | Impaired | Mary F. Crocker ("Crocker") holds a claim in the amount of $90,138.88 pursuant to her claim filed at Proof of Claim filed at 4-1. Crocker shall be paid be the full value of her claim once determined. See Sections 2.2.1 p) – r) for Plan treatment. |

p)      Class 6 creditor is uniformly being paid the full value of her allowed claim over a period of sixty (60) months with first payment being due on or before the last day of the month in the month following the effective date of the Plan with subsequent payments due on or before the last day of every month thereafter until the claim is paid in full pursuant to the terms contained in this Plan.

q)      Upon completion of all payments to Class 6 creditor as called for in this Plan, the creditor shall satisfy, remove and/or extinguish any liens against the assets of the Debtor supported by UCC filing with the Commonwealth of Pennsylvania and/or judgment. The creditor shall file said satisfaction with the appropriate state office within thirty (30) days of tender of final payment.

r)      Class 6 creditor and Debtor shall each pay their own legal fees (if any) incurred in connection with Debtor's Chapter 11 Bankruptcy case.

### 2.2.2   Priority Unsecured Claims

Certain priority Claims that are referred to in §§507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following table lists the classes of Debtor's Priority Unsecured Claims and their proposed treatment under the Plan:

| Class # | Description of Claim | Impaired/ Unimpaired | Treatment |
|---|---|---|---|
|  | §507(a)(1) Claims<br><br>Total Amount: $_____ |  |  |

| | §507(a)(4) Claims<br><br>Total Amount: $_____ | | |
|---|---|---|---|
| | §507(a)(5) Claims<br><br>Total Amount: $_____ | | |
| | §507(a)(6) Claims<br><br>Total Amount: $_____ | | |
| | §507(a)(7) Claims<br><br>Total Amount: $_____ | | |

### 2.2.3   General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

Insert description of §1122(b) convenience class if applicable:

The following table lists the classes of the Debtor's General unsecured Claims and their proposed treatment under the Plan:

| Class # | Description | Impaired / Unimpaired | Treatment |
|---|---|---|---|
| 7 | TSB, Inc. t/d/b/a 'Schultheis Electric' POC 7 - $1368.09 | Impaired | See Section 2.2.3 a) below. |
| 7 | Jeffrey A. Fennel dba Conservative Machine & Automation dba CMA POC 8 - $185,331.29 | Impaired | See Section 2.2.3 a) below. |
| 7 | Air Technology - $2,050.88 | Impaired | See Section 2.2.3 a) below. |
| 7 | McMaster-Carr Supply Co. – $208.09 | Impaired | See Section 2.2.3 a) below. |
| 7 | Millacron Servtek - $10,161.00 | Impaired | See Section 2.2.3 a) below. |
| 7 | O & S Machine Company LLC - $3,517.50 | Impaired | See Section 2.2.3 a) below. |
| 7 | PA VC Fund - $579.21 | Impaired | See Section 2.2.3 a) below. |
| 7 | Pittsburgh Hydraulics & Repair - $511.50 | Impaired | See Section 2.2.3 a) below. |

a) Undisputed, known Class 7 General Unsecured Claims total $203,727.56. The Debtor shall make distribution of $169.77 per month that shall be divided and paid pro-rata to all allowed Class 7 claims. Payments shall begin on or before the last day of the month of the month following the effective date of the Plan. Subsequent payments shall be made by the Debtor on or before the last day of the month every month thereafter for a total of 60 payments. Total payment to Class 7 creditors shall be

10,186.38, which will pay all allowed and currently know General Unsecured Creditors approximately 5% of their allowed claims.

    b) Disputed Class 7 claims will not receive any distributions pursuant to the Plan.

    c) Class 5 creditors identified in Section 2.2.1 whose collateral either has or will be returned shall have 30 days from the date of Plan confirmation to file any deficiency claim with respect to the surrendered collateral. Any timely filed and allowed deficiency claim shall be treated and paid as described in Section 2.2.3 a) above.

### 2.2.4   Equity Interest Holders

    The following table lists the classes of Equity Interests and their proposed treatment under the Plan:

| Class # | Description | Impaired / Unimpaired | Treatment |
|---------|-------------|-----------------------|-----------|
| 8 | Bradley Jackovitz | Unimpaired | Bradley Jackovitz will continue to be the 100 % shareholder of the Debtor. |

### 2.3    <u>Claims Objections</u>

    The Debtor may object to the amount or validity of any claim within forty-five (45) days following entry of the Post-Confirmation Order  (unless otherwise modified or extended by Court Order) by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.  No payment will be made to a holder of a Disputed Claim unless and until it becomes an Allowed Claim.  To the extent the Disputed Claim becomes an Allowed Claim, the Debtor will pay the Allowed Claim in accordance with the Plan.

### 2.4    <u>Treatment of Executory Contracts and Unexpired Leases</u>

    Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract.  The defined term "Executory Contract" as used in this Plan includes unexpired leases.

    The Executory Contracts to be assumed by the Debtor and performed by the Debtor after confirmation are set forth on **Schedule 2.4(a)** attached hereto.  Schedule 2.4(a) provides the name of the counterparty to the Executory Contract, a brief description of the contract, and the proposed cure amount.

    The Executory Contracts to be assumed by the Debtor and assigned to a third party are set forth on **Schedule 2.4(b)** attached hereto.  Schedule 2.4(b) provides the name of the counterparty to the Executory Contract, a brief description of the contract, the name of the proposed assignee and the proposed cure amount.

If the proposed assignee is an Insider describe the relationship here:

Unless a Bankruptcy Court Order states otherwise, objections to the assumption of an Executory Contract, the proposed cure amount, or the adequacy of assurance of future performance, must be filed and served on or before the deadline for filing Plan objections.

All Executory Contracts not listed on Schedule 2.4(a) or 2.4(b) shall be deemed rejected upon entry of the Confirmation Order and the Debtor will no longer continue to perform its obligations under the Executory Contract.  For the convenience of creditors, the Debtor has prepared the attached **Schedule 2.4(c)** listing Executory Contracts to be rejected upon entry of the Confirmation Order.  For the avoidance of doubt, however, any Executory Contract not listed on either Schedule 2.4(a) or 2.4(b) will be conclusively deemed rejected even if not expressly shown on Schedule 2.4(c).

The deadline for filing a proof of claim arising from rejection of an Executory Contract shall be [30] days following entry earlier of: (a) the Confirmation Order; or (b) any Order of Court specifically providing for the rejection of the applicable Executory Contract.  Any Claim based on the rejection of an Executory Contract that is not timely filed shall be a Disputed Claim.

**2.5**     **Means for Implementation of the Plan and Plan Funding**

**2.5.1**   Describe how the Plan will be implemented, including how the Plan will be funded.

The Debtor intends to implement the Plan and fund it through ongoing revenue of the Debtor's specialized plastics manufacturing business.

**2.5.2**   If the Plan proposes a sale of the Debtor's assets, describe how the sale will proceed, including anticipated marketing efforts and proposed bidding procedures.

N/A

**2.5.3**   Describe any post petition or exit financing the Debtor has or will obtain to fund the Plan

N/A

**2.5.4**   Describe Additional provisions, if any, for implementing the plan, including provisions necessary to comply with §1191(c)(3)(B).

None.

**2.6**     **Payments**

The Debtor shall make Plan payments unless the Plan is confirmed under §1191(a), whereupon payments to Creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a), (to the extent of   any payments and funds received by the Trustee prior to confirmation). Once the Trustee's service is terminated under §1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under §1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Debtor shall make all Plan payments to creditors under the Plan.

Payments made pursuant to the Plan that are unclaimed after six (6) months shall be treated as unclaimed funds and shall include checks and funds represented by the checks which have been returned as undeliverable without a proper forwarding address.  Provided that the Plan distribution was sent to the claimant's last known address on the claims register, unclaimed funds shall constitute an abandonment of the claim and become the property of the Debtor or the entity acquiring the assets of the Debtor under the Plan (as applicable).

## 2.7    Termination of Trustee Services

If the Plan is confirmed under §1191(a), the service of the Trustee shall terminate when the Plan has been substantially consummated (within the meaning of, and except as otherwise provided in §1183(c)(1)).  If the payments contemplated by the Plan are made, the Debtor believes substantial consummation of the Plan will occur on first distribution to all classes of creditors which will receive ongoing payments under the Plan. Not later than 14 days after substantial consummation, the Debtor will file and serve, in accordance with §1183(c)(2), a notice that the Plan is substantially consummated.

## 2.8    Post-Confirmation Management

The Debtor's management immediately prior to the Effective Date shall serve as the Debtor's management on and after the Effective Date.  Upon entry of the Confirmation Order, officers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| Bradley Jackovitz | Chief Executive Officer | $31,800.08 |
| Matthew Redmond | Chief Operating Officer and Chief Financial Officer | $0.00 |

## 2.9    Tax Consequences of the Plan

*The Debtor makes no representation regarding the tax consequences of the Plan to any Creditor or Equity Interest Holder. Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.*

## ARTICLE 3

## FEASIBILITY OF PLAN

## 3.1    Ability to Initially Fund Plan

The Debtor's financial projections demonstrate sufficient cash on hand to satisfy obligations due

on the Effective Date of the Plan, including payment of the Allowed Administrative Claims, U.S. Trustee Fees, and cure amounts, in accordance with the Bankruptcy Code or as otherwise agreed.  *See* Schedule 3.1 attached hereto.

**3.2**  **Ability to Make Future Plan Payments And Operate Without Further Reorganization**

Pursuant to §1190(2) of the Bankruptcy Code, the Debtor shall submit all or such portion of future income as is necessary for the confirmation of the Plan and to satisfy the Debtor's obligations under Article 2 of the Plan.

Attached hereto as **Schedule 3.2**, are the Debtor's financial projections demonstrating the Debtor's ability to make all future Plan payments in the aggregate amount of $497,049.60 during the Plan term (the "Plan Funding").  Plan Funding is in an amount equal to the Debtor's disposable income as defined in §1191(d) of the Bankruptcy Code.

The final Plan payment is expected to be paid on 61 months after the Plan Confirmation Date.

**You Should Consult with Your Accountant or other Financial Advisor
If You Have Any Questions Pertaining to the Debtor's Financial Projections.**

**ARTICLE 4**

**LIQUIDATION ANALYSIS**

**4.1**  **Comparison of Plan with Chapter 7 Liquidation**

In order to confirm the Plan, the Bankruptcy Court must find that holders of Allowed Claims and Equity Interests who do not accept the Plan will receive at least as much under the Plan as such holders would receive in a Chapter 7 liquidation of the Debtor's assets (the "Liquidation Test").

If the Debtor's proposed Plan is not confirmed, the potential alternatives would include dismissal of the case or conversion of the case to Chapter 7.  If this case is converted to Chapter 7, a Chapter 7 Trustee will be appointed to liquidate all the Debtor's non-exempt assets.  In this event, all Secured Claims (to the value of the collateral) all Priority Unsecured Claims and all Administrative Claims (both Chapter 7 and Chapter 11) must be paid in full before any distribution is made to holders of General Unsecured Claims.

**4.2**  **Liquidation Analysis**

Based upon the liquidation value of the Debtor's assets in Plan Section 1.4 and the amount of claims set forth in Plan Section 1.5, the Debtor's Plan passes the Liquidation Test.

| VALUE OF CHAPTER 7 ESTATE (NET OF SECURED CLAIMS AND EXEMPTIONS) | |
|---|---|
| Value of Estate's Interests in Assets | $0.00[3] |
| **Minus** | |
| • Estimated Chapter 7 expenses (calc. at 8% of the Total Value All Assets): | -$0.00 |
| • Amount of Administrative Claims | -$0.00 |
| • Amount of Priority Tax Claims | -$53,205.91 |
| • Amount of Priority Unsecured Claims | -$0.00 |
| **TOTAL Available For General Unsecured Claims in a Chapter 7 Liquidation** | **$0.00** |

| AMOUNT OF GENERAL UNSECURED CLAIMS IN A CHAPTER 7 LIQUIDATION | |
|---|---|
| Class 7 General Unsecured Claims Amount | $203,727.56 |
| **Plus** | |
| • Undersecured portion of Secured Claims added to General Unsecured Claims due to Liquidation | $0.00 |
| **TOTAL Amount of General Unsecured Claims in a Chapter 7 liquidation** | $203,727.56 |
| **Percentage Distribution to Holders of General Unsecured Claims in a Chapter 7 Liquidation** | **0.00%[4]** |

The Plan passes the Liquidation Test because the percentage distribution to holders of Class 7 Allowed Unsecured Claims under the Plan is projected to be 5% whereas such Creditors are projected to receive 0.00 % in a hypothetical chapter 7 liquidation.

Accordingly, under the hypothetical Chapter 7 liquidation, although Class 2 will be paid in full, holders of Allowed Claims under Class 3, 4, 6 and 7 will receive less favorable treatment than what is proposed under the Plan.

---

[3] *This number should be the same as the Total Value of the Estate's Interest in Assets listed in Section 1.4 of the Plan*
[4] *Divide Total Amount of General Unsecured Claims in the hypothetical liquidation by the total amount available to pay General Unsecured Claims in a hypothetical liquidation*

# ARTICLE 5

## DISCHARGE

As soon as practicable after completion by the Debtor of all payments due under the Plan, unless the Court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in §1141(d)(1)(A) of this title, and all other debts allowed under §503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in §523(a) of this title.

# ARTICLE 6

## GENERAL PROVISIONS

### 6.1    Title to Assets

If the Plan is confirmed under §1191(a), except as otherwise provided in the Plan or in the Confirmation Order, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after Plan Confirmation, the property dealt with by the Plan is free and clear of all Claims and Equity Interests.

### 6.2    Binding Effect

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3    Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4    Retention of Jurisdiction by the Bankruptcy Court

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any

modification of the Plan proposed under §1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases; (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action; and (vi) to direct the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the confirmed Plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the Plan.

## 6.5    Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## 6.6    Modification of Plan

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to §1193(a). However, the Bankruptcy Court may require additional items including re-voting on the Plan.

If the Plan is confirmed under §1191(a), the Debtor may also seek to modify the Plan at any time after Confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under §1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

## 6.7    Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.


## ARTICLE 7

## DEFINITIONS

The definitions and rules of construction set forth in §§101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan. Where applicable, the definitions that follow that are found in the Bankruptcy Code are for

convenience of reference only, and are superseded by the definitions found in the Bankruptcy Code.

**7.1**    **Administrative Claim:** Any cost or expense of administration of the Chapter 11 Case entitled to priority under §507(a)(2) of the Bankruptcy Code and allowed under §503(b) of the Bankruptcy Code.

**7.2**    **Allowed:** With respect to a Claim or Equity Interest means any claim against or equity interest in the Debtor pursuant to §502 of the Bankruptcy Code to the extent that: (a) the Debtor schedules such Claim as an undisputed, non-contingent and liquidated Claim, or (b) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court, and, as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**7.3**    **Avoidance Actions**:  All causes of actions, suits, choses in action, and claims of the Debtor and/or the Debtor's estate against any entity or person seeking to avoid a transfer of property, recovery of property and subordination or other actions or remedies that may be brought on behalf of the Debtor or the Debtor's estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

**7.4**    **Bankruptcy Code:** The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**7.5**    **Bankruptcy Court:** The United States Bankruptcy Court for the Western District of Pennsylvania.

**7.6**    **Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**7.7**    **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**7.8**    **Chapter 11 Case**: This case under Chapter 11 of the Bankruptcy Code in which LA Tool, Inc. is the Debtor-in-Possession.

**7.9**    **Claim**: Any claim as defined in §101(5) of the Bankruptcy Code.

**7.10**   **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**7.11**   **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**7.12**   **Confirmation  Date**:  The  Date  upon  which  the  Bankruptcy  Court  shall  enter  the

Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

7.13    **Confirmation Order**:  An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

7.14    **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

7.15    **Debtor**: LA Tool, Inc., the debtor-in-possession in this Chapter 11 Case.

7.16    **Disputed Claim:** Any claim against the Debtor pursuant to §502 of the Bankruptcy Code that the Debtor or any party in interest has in any way objected to, challenged or otherwise disputed.

7.17    **Effective Date**: The date on which the Plan shall become effective.

7.18    **Equity Interest**: An ownership interest in the Debtor.

7.19    **Executory Contracts**: All unexpired leases and executory contracts as described in §365 of the Bankruptcy Code.

7.20    **Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

7.21    **General Unsecured Claim**: Any Claim in the Chapter 11 case which is not a Secured Claim, Priority Tax Claim, or Priority Unsecured Claim.

7.22    **Insider:** The relationship between the Debtor and other persons defined at §101(31) of the Bankruptcy Code.

7.23    **Petition Date**: December 10, 2023, the date the Chapter 11 petition for relief was filed.

7.24    **Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

7.25    **Post-Confirmation Order**:  The Post-Confirmation Order and Notice of Deadlines entered by the Bankruptcy Court following Plan Confirmation providing, among other things, the deadlines by which certain post-Confirmation actions must be taken.

**7.26    Priority Unsecured Claim**: Any Claim entitled to priority in payment under §507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code.

**7.27    Priority Tax Claim**: Any Claim entitled to priority in payment under §507(a)(8) of the Bankruptcy Code.

**7.28    Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**7.29    Secured Claim:** A Claim that is secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Bankruptcy Code.

**7.30    Trustee**:  James Fellin, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**7.31    Value of the Estate's Interest in Assets**:  As to any asset of the Debtor, the value of the estate's interest in an asset is calculated by subtracting from the Liquidation Value listed for the asset in Plan Section 1.4: (a) the amount of the Allowed Secured Claims having a security interest in the asset; and (b) the amount of any claimed exemption applicable to the asset.  The Value of the Estate's Interest is calculated for purposes of the Liquidation Test in Article 4 of this Plan, only, and for no other purpose.

Respectfully submitted,


/s/Gregory C. Michaels
Gregory C. Michaels, Esquire
Dickie McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA  15222-5402
412-281-7272
gmichaels@dmclaw.com
PA Attorney I.D. No. 205948
Counsel for Debtor LA Tool, Inc.

**ARTICLE 8**

**EXHIBITS, SCHEDULES AND CHARTS**

The following checked documents either accompany the Plan or are included within the Plan

| | | |
|---|---|---|
| [x ] | Debtor's Assets at Fair Market Value | Article 1, Section 1.4 |
| [x ] | Debtor's Liabilities, listed by Class | Article 1, Section 1.5; *see also* Article 2, Sections 2.1 and 2.2 |
| [x ] | Executory Contracts and Unexpired Leases to be Assumed | Schedule 2.4(a) |
| [x ] | Executory Contracts and Unexpired Leases to be Assumed and Assigned | Schedule 2.4(b) |
| [x ] | Executory Contracts and Unexpired Leases to be Rejected | Schedule 2.4(c) |
| [x ] | Sources and Uses of Cash to Fund the Plan | Article 3.1 and Schedule 3.1 |
| [x ] | Financial forecast for the Debtor | Article 3.2 and Schedule 3.2 |
| [ x] | Liquidation Analysis | Article 4 |

## SCHEDULE 2.4(a)

## Executory Contracts and Unexpired Leases to be Assumed

| Counterparty Name & Address | Contract or Lease Description | Termination Date | Cure Amount[5] |
|---|---|---|---|
| | N/A | | |
| | | | |
| | | | |

---

[5] *If the contract or lease is current and there is nothing outstanding then indicate the cure amount is $0.00.*

**SCHEDULE 2.4(b)**

**Executory Contracts and Unexpired Leases to be Assumed and Assigned**

| Counterparty Name & Address | Contract or Lease Description | Termination Date | Cure Amount[6] | Proposed Assignee Name & Address |
|---|---|---|---|---|
| | N/A | | | |
| | | | | |

---

[6] *If the contract or lease is current and there is nothing outstanding then indicate the cure amount is $0.00.*

## SCHEDULE 2.4(c)

## Executory Contracts and Unexpired Leases to be Rejected

| Counterparty Name & Address | Contract or Lease Description | Termination Date | Rejection Date |
|---|---|---|---|
| Wells Fargo Vendor Financial Services, LLC | Master Lease Agreement | N/A | Petition Date |
|  |  |  |  |
|  |  |  |  |

## SCHEDULE 3.1

### Sources and Uses of Cash to Fund the Plan

The sources and Uses of the Cash the Debtor will have on hand by the Effective Date are estimated as follows:

Current Bank Account Balance:                                          $179.56

### Plus

Additional Cash Debtor anticipates will                          $10,000.00
accumulate from net earnings between now
and Effective Date[7]

Borrowing[8]                                                                      $0.00

Capital Contributions                                                        $0.00

Other (explain):                              $5,000.00 (escrowed Trustee Fees)

**Cash on hand on the Effective Date:**                      **$15,179.56**

### Less

Administrative Claims paid on Effective                        $5,000.00
Date

Statutory costs and charges, including U.S.                      $0.00
Trustee Fees

Cure Amounts                                                                    $0.00

Other Payments Due on the Effective Date                        $0.00

**Balance after paying these amounts**                      $10,179.56

---

[7] The basis for these projections is set forth in Article 3 of the Plan and Schedule 3.2.
[8] Details concerning any Borrowings used to the fund the Plan are set forth in Article 2, Section 2.5.

**SCHEDULE 3.2**

**Financial Projections**

The Debtor's Plan calls for the following ongoing monthly payments to be made during the first twelve months after Confirmation:

| | |
|---|---|
| Class 2 – Secured Claim | $3,390.87 |
| Class 3 – Secured Claim | $1,500.00 |
| Class 6 – Secured Claim | $1,579.93 |
| Class 7 - General Unsecured Claims | $169.77 |
| Administrative Claims | $1,643.59* |
| | |
| Total Monthly Payment | $8,284.16 |

*The Administrative Claims payment is solely dedicated to payment towards the tax claims of the Debtor. Balance of fees owed to Subchapter V Trustee have been escrowed and will distributed upon the effective date of the Plan. Fees owed to Debtor's counsel are not included in this payment and will be made in accordance with Section of the Plan.

"Exhibit A" to Schedule 3.2 is the twelve-month income and expense projections of the Debtor in the form of a projected monthly profit and loss statement that includes actual revenue and expenses for January 2024 through April 2024 and projects May 2024 through May 2025. The statement and projections were prepared by the Debtor and are based on the past history, performance since the filing of the Chapter 11 case, developments in the operation of the business, and anticipated future revenue and expenses based on current state of the business.

Exhibit A is based upon the following assumptions:

- No monthly plan payments were included in the projections;
- The overall profit at the conclusion of the projections is $101,482.99, which is an average of $8,456.92 per month.
- The overage of $172.76 per month between projected revenue over expenses and the Plan payment will provide a cushion to Debtor in the event of unanticipated and unforeseen expenses.

As Debtor's monthly Plan payment will be approximately 8,284.16 per month and the

Debtor's anticipated average monthly profit is $8,456.92, the Debtor believes that the proposed Plan is feasible and all reasonable disposable income is being used to fund the Plan in order to maximize the dividend to general unsecured creditors. Therefore, the Plan is feasible and in the best interest of all creditors and parties in interest.